66 F.Supp. 62 (1946)
ST. LOUIS REFRIGERATING & COLD STORAGE CO.
v.
UNITED STATES.
No. 4059.
District Court, E. D. Missouri, E. D.
May 28, 1946.
J. M. Blayney and Harold S. Cook, both of St. Louis, Mo., for plaintiff.
Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, of St. Louis, Mo. (Sewall Key, Acting Asst. Atty. Gen., and Andrew D. Sharpe and Ruppert Bingham, Sp. Assts. to Atty. Gen., on the brief), for defendant.
HULEN, District Judge.
Plaintiff sues to recover corporate income tax and interest of $4,752.32 for fiscal year ending April 30, 1942, after adverse ruling on claim for refund. The case was submitted on agreed statement of facts.
J. C. Walton and wife executed collateral assignment to plaintiff on October 25, 1932, of three life insurance policies having face value of $25,000. The wife was beneficiary of the policies. Walton was indebted to plaintiff in excess of $25,000, evidenced by five promissory notes, dated January 2, 1932, due respectively two, three, four, five and six years after date. The assignment recited the interest of assignee in the assigned policy "shall include any and all indebtedness which may now or at any time hereafter be owing to the said assignee and which may exist at the time of the settlement of the policies, the remainder of said policies, if any, being unaffected by this assignment." On assignment, the policies had a cash surrender value of *63 $8107, subject to loans aggregating $6734.89 plus interest of $197.18. For fiscal year ending April 30, 1933, plaintiff charged off the Walton indebtedness of $25,000 and took a deduction of $25,000 on its tax return for that year, thus acquiring a tax benefit. Walton died during the year preceding April 30, 1942. Plaintiff received $18,188.70, representing net proceeds of Walton's insurance, none of which was included in its tax return. After deducting premiums of $5012.57 paid by plaintiff, the Commissioner taxed the remainder of the insurance proceeds. Plaintiff paid the deficiency of $4,004 plus interest of $487.72, for which recovery is now sought.
Plaintiff claims that proceeds of insurance policies are exempt from taxation under the provisions of Section 22(b) of the Internal Revenue Code, Title 26 U.S.C.A. Int.Rev.Code, § 22. Defendant answers that the policies were transferred by assignment for a valuable consideration, and since the indebtedness of Walton was deducted as a bad debt, resulting in a tax benefit, the insurance payment represents income, taxable under Subsection (b) (2) of Section 22.[1] Plaintiff replies that if any consideration was given for the transfer, it was Walton's indebtedness, and since this alleged consideration exceeds the amount received from the policies, there is no net recovery by the taxpayer.
Subsection (b) (1) of Section 22 of the Code does exempt from gross income "amounts receive under a life insurance contract paid by reason of the death of the insured," but Subsection (b) (2) provides: "In the case of a transfer for a valuable consideration, by assignment or otherwise, of the life insurance * * * only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph." The assignment[2] recites *64 a "consideration of $1.00." The entire interest of assignors in the policies is not assigned, but the interest of plaintiff is conditioned: "The interest of the assignee in the policies hereby assigned shall include any and all indebtedness which may now or at any time hereafter be owing to the said assignee and which may exist at the time of the settlement of the policies. The remainder of said policies, if any, shall be not affected by this assignment." There is no ambiguity in the statute, or the instrument of assignment. Life insurance policies are a subject of assignment in Missouri.[3] At the time of the assignment, the Walton notes evidencing the indebtedness to plaintiff were not due. The assignment was in the nature of collateral security for the indebtedness of Walton, and on assignment, the policies constituted a form of indemnity. The assignment provides the interest of plaintiff in the policies is to the extent of "all indebtedness" which may exist at the time of settlement under the policies, any excess "being unaffected by this assignment." We conclude the amount received by plaintiff on the policies constitutes income and the taxpayer is entitled to exemption for amounts representing "only the actual value of such consideration" gives for the assignment "and the amount of the premium * * * paid" by plaintiff.
Amounts received as reimbursements for losses incurred for which deductions from gross income have previously been allowed, with a resulting tax benefit, are includable in gross income in the year received.[4]
Plaintiff's position, that the consideration for the transfer of the policies "necessarily was the amount of indebtedness of plaintiff Walton" of $25,000 cannot be sustained. The burden is on plaintiff to show the "actual value" of the "consideration" passing to Walton for the assignment. Aside from the instrument of assignment, its proof of certainty of value fails. While plaintiff asserts a consideration representing the indebtedness, the Court cannot assume the face value of the notes (of principal or interest) represents the "actual value." No effort was made to prove their actual value. That actual value was less than face value is manifest or at least indicated by the charge off. Viewed most favorably to plaintiff, actual value of the notes, or any part of them, at the time of the assignment is speculative.[5]
*65 We conclude that under Section 22 (b) (2) of the Code, the net proceeds received by plaintiff on the assigned policies, less premiums paid by plaintiff, less the consideration of $1,000, constitute gross income to the plaintiff, includable in taxpayer's gross income, for the year received.
The complaint should be dismissed.
NOTES
[1] Title 26 U.S.C.A. Int.Rev.Code, § 22.

"Gross Income
"(a) General definition. `Gross income' includes gains. profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly. In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income.
"(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:
"(1) Life insurance. Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);
"(2) Annuities, etc. * * * In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph."
[2] Copy of the Assignment follows:
Creditor Form (253)
 (Original)

Assignment of Policy as Collateral Security for Present and Future Indebtedness.
In Consideration of One ...... Dollars the receipt of which is hereby acknowledged we hereby sell, assign, transfer and set over unto St. Louis Refrigerating & Cold Storage Co., a corporation of St. Louis in the State of Missouri and its Successors and assigns, as their interest may appear, all our right, title and interest in and to
 (1444852
Policies Nos. (1444853 issued by The
 (1449160
Northwestern Mutual Life Insurance Company, subject to all the terms and conditions in said policies contained. The interest of the assignee in the policies hereby assigned shall include any and all indebtedness which ____ may now or at any time hereafter be owing to the said assignee and which may exist at the time of the settlement of the policies, the remainder of said policies, if any, being unaffected by this assignment.
"Witness our hand  and seal  at St. Louis in the State of Missouri, this 25th day of October, 1932.
 "(Signed) J. C. Walton (L. S.)
 "Insured sign here
 "(Signed) Frances B. Walton (L. S.)
 "Beneficiary, if any, sign here
 "Signed, Sealed and Delivered
 in Presence of
 "(signed) R. H. Switzler
 "(signed) W. C. Cassens

[3] Missouri State Life Ins. Co. v. California State Bank, 202 Mo.App. 347, 349, 216 S.W. 785; First National Bank of Beeville, Texas v. Security Mutual Life Ins. Co., 283 Mo. 336, 348, 222 S.W. 832; Baker, Trustee v. Young, 47 Mo. 453.
[4] Putnam Nat. Bank v. Commissioner, 5 Cir., 50 F.2d 158; Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320, 325; Nash v. Commissioner, 7 Cir., 88 F.2d 477; Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383.
[5] While the notes of J. C. Walton had a total face value of $25,000, it does not necessarily follow that their actual value was the same as their face value. Commonwealth v. Lehigh Valley R. Co., 104 Pa. 89, 101. As used in the Revenue Act, the term "actual value" conveys the idea of a definite or certain value, something in no sense speculative. Lynch v. Union Trust Co., 9 Cir., 164 F. 161, 167; Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 48, 61 S.Ct. 109, 85 L.Ed. 29; Deputy v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L. Ed. 1348.